UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 AND 9
Maggie H. McGee, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email: maggie.mcgee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

_____
:
In re: : Case No. 20-19678 KCF
: Chapter 11
Mick Properties, LLC., :
: Honorable Kathryn C. Ferguson
Debtor. :
_____ :

**OBJECTION OF THE UNITED STATES TRUSTEE TO
THE DEBTOR'S APPLICATION FOR RETENTION OF PROFESSIONAL,
OFFICE OF GORSKI & KNOWLTON AS ATTORNEYS FOR THE DEBTOR IN
POSSESSION**

The United States Trustee ("U.S. Trustee"), by and through counsel, and in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby files this objection ("Objection") to the *Application for Retention of Professional* ("Retention Application") Gorski & Knowlton (ECF No. 5) filed in connection with the above referenced case, and respectfully states as follows:

## BACKGROUND

1. On August 18, 2020, Mick Properties, LLC ("Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. ECF No. 1.

2. The Petition identifies Patrick Vagnozzi as the Debtor's principal ("Debtor's Principal"). ECF No. 1 at 2.

1

3. The Debtor's List of Equity Security Holders identifies Debtor's Principal as the 100% shareholder and managing member of the Debtor. ECF No. 1 at 27.

4. The meeting of creditors is scheduled for September 17, 2020 at 11:00 a.m. ECF No. 2.

5. Allen Gorski of Gorski & Knowlton ("Applicant") filed the petition on behalf of the Debtor. ECF No. 1.

6. On August 19, 2020, the Debtor filed a Retention Application seeking to employ Applicant as counsel ("Retention Application"). ECF No 5.

7. The Retention Application fails to disclose whether Applicant received or agreed to receive a retainer, the source of the retainer, or the date the retainer was paid.

8. The Retention Application, paragraph 7, states the Applicant has no connection with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. ECF No. 5 at 2.

9. The Retention Application, paragraph 8, states the Applicant does not hold an adverse interest to the estate, does not represent an adverse interest to the estate, is a disinterested person under 11 U.S.C. § 101(4) and had not represent or hold any interest adverse to the debtor or the estate with respect to the matter for which he/she will be retained under 11 U.S.C. §327(e). ECF No. 5 at 3.

10. Paragraph 8 of the Retention Application discloses "Gorski & Knowlton represented me personally since June 29,2020 in connection with City of Trenton in rem tax foreclosure." ECF No. 5 at 3. The Certification of Professional in Support of Application for

Retention of Professional states that Allen Gorski has no connection with debtor, creditor or other parties in interest. ECF No. 5-1 at ¶ 6.

11. The Retention Applications does not disclose the status of the matter in which Applicant represents the Debtor's Principal, whether the matter relates to the Debtor, and whether the matter has been resolved.

12. The Retention Application does not disclose: a) if there exist any debts owed by the Debtor's Principal to the Debtor or vice versa; b) whether the Debtor's Principal has guaranteed the fees owed by the Debtor; or c) whether the Debtor's Principal will be responsible for the fees going forward.

13. The Disclosure of Compensation of Attorney for Debtor ("2016 Statement") discloses that Applicant agreed to accept a $10,000 retainer and that as of the date of filing, the retainer was still owing. ECF No. 1 at 26. In a contradictory statement, the 2016 Statement discloses that the source of the retainer was a gift from Debtor's Principal to the Debtor. ECF No. 1 at 26.

14. According to the 2016 Statement, Applicant received fees from the Debtor, which came from a gift from the Debtor's Principal. ECF No 1 at 26. The 2016 Statement indicates that the source of compensation to be paid to Applicant is the Debtor. However, the Debtor has no bank accounts. ECF No. at 8.

15. The Statement of Financial Affairs, Part 6, number 11, discloses that Gorski & Knowlton received $11,717 on August 18, 2020 from the Debtor, which source was a gift from Debtor's Principal. ECF No. 1 at 20.

**OBJECTION**

15. Under 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 7 and 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the Courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6t Cir. 1990) (describing the U.S. Trustee as a "watchdog"); H.R. REP. NO. 95-595 at 88 (1977), *reprinted in* 1977 U.S.C.C.A.N. 5787, 5963, 6049 ("Some of the supervisory functions removed from the judge will be transferred to a new system of United States Trustees who will act as bankruptcy watchdogs[.]").

### I. Applicant Failed to Satisfy the Requisite Disclosure Requirements

16. Pursuant to Federal Rule of Bankruptcy Procedure 2014, which implements section 327(a), an application to employ an estate professional must:

> [S]tate the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FRBP 2014(a).

17. Courts construe the disclosure requirements of FRBP 2014 "strictly." *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir.

1995). "Full, complete, and timely disclosure by an attorney proposing to represent a debtor 'goes to the heart of the integrity of the bankruptcy system.'" *In re etoys, Inc.* 331 B.R. 176, 187-189 (Bankr. D. Del. 2005). A court cannot effectively determine an attorneys' eligibility for employment pursuant to section 327 or root out impermissible conflicts of interest without proper disclosure on the part of an applicant. *Id.* The disclosure rules are not discretionary. *In re Moten Metal Tech, Inc.* 289 B.R. 505, 5111 (Bankr. D. Mass. 2003).

18. If Applicant is to be employed, he must comply with all disclosure requirements, including section 327(a), F.R.B.P. 2014, section 329(a) and F.R.B.P. 2016(b).

19. Applicant has failed to disclose in his Retention Application the existence of a retainer paid, the source of the retainer and the dates upon which the payment or payments were received.

20. Applicant's 2016 Statement, Retention Application, and response to Part 6, number 11 of the SoFA are inconsistent. Applicant must disclose whether the retainer was paid pre or post-petition, the amount of the retainer paid and the source of retainer in both the 2016 Statement **and** the Retention Application.

21. Because the Debtor identified no bank accounts on Schedule B and the Debtor's Principal paid the retainer, the source of Applicant's future compensation is unclear. Applicant should disclose how the Debtor will be paying the fees going forward, including the source of those fees. For example, the Debtor should disclose whether the fees are to be paid from future gifts from the Debtor's Principal, whether the Debtor's Principal will be ultimately responsible for the fees, or whether the Debtor will be opening a bank account where rents are deposited and will fees come from those funds.

22. Applicant should also be required to disclose more details regarding the current or prior representation of the Debtor's Principal. Applicant should disclose the status of the matter, whether the matter relates to the Debtor, and whether the matter has been resolved.

23. Applicant should be required to disclose information relating to the disclosure required when an insider proposes to fund the debtor's bankruptcy counsel as set forth in *In re Lotus Properties LP*, 200 B.R. 388, 393 (Bankr. C.D. Cal. 1996). The Court in *Lotus Properties* applied a five-part test in determining whether the debtor could be funded by the Debtor's insiders. *Id., citing In re Kelton,* 109 B.R. 641 (Bankr. D. Vt. 1989). The five part test requires the following: 1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider; 2) the debtor must expressly consent to the arrangement; 3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client; 4) the factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation; 5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinterestedness, actual conflict or impermissible potential for a conflict of interest. *In re Lotus Properties,* 200 B.R. at 393.

**II.     Applicant May Not Disinterested Based Upon the Apparent Arrangement for the Payment of Applicant's Fees.**

24. Pursuant to 11 U.S.C. § 327(a), any professional employed by a debtor-in-possession must be "disinterested" and neither hold nor represent an interest adverse to the estate.

25. Section 101(14), in turn, defines "disinterested person" as a person who does not have an "interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14). Sec. 101(14)C), referred to as the "catch-all clause," has been characterized as "broad enough to include anyone who in the slightest degree might have some interest or relationship that would distract from the independent and impartial attitude which is required by the [Bankruptcy] Code." *In re Glenn Elec. Sales Corp.*, 89 B.R. at 413; *See also, In re Black Hills Greyhound Racing Ass'n*, 154 B.R. 285, 292 (Bankr. D.S.D. 1993).

26. Although not defined in the Bankruptcy Code, "adverse interest" has been interpreted in this District to mean:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Glenn Elec. Sales Corp.*, 89 B.R. 410, 413 (Bankr. D.N.J.), *aff'd*, 99 B.R. 596 (D.N.J. 1988) (quoting *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr. D.N.J. 1988)). In applying this definition, the court in *In re Glenn Elec. Sales Corp.* relied upon a trilogy of cases published from the District of Hawaii dealing with conflict of interests between debtors and counsel in bankruptcy proceedings.

27. Professionals for a bankruptcy estate must be committed to protecting the estate's interests and be free of the "interests of any other person" so that their "basic judgment and responsibility to the estate" is not affected. *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328,

337 (E.D. Pa. 1982). A professional "should not place himself in a position where he may be required to choose between conflicting interests or duties." *Id.; See, e.g., In re 765 Assocs.*, 14 B.R. 449, 451 (Bankr. D. Hawaii 1981) ("An attorney should not place himself in a position where he may be required to choose between conflicting duties.")

28. Based on the information presented, Applicant is not "disinterested" as required by § 327. Since the Debtor has no bank accounts and the Debtor's Principal is paying the retainer, it appears the Debtor may be responsible for the future fees owed to the Applicant. If Applicant's fees are the personal responsibility of the Debtor's Principal, and the Debtor's Principal is an insider in this case, the payment arrangement presents a conflict of interest. If the Debtor's Principal is personally liable for legal fees of the Debtor, the arrangement creates an incentive for the Debtor's Principal to act in his self-interest, rather than in the interests of the creditors as their fiduciary duty demands. For example, Applicant may or may not pursue any potential preference actions against Debtor's Principal that would benefit the estate but accrue additional administrative costs. One of the cases relied upon by the *Glenn Electric* court, *In re Bergdog Productions of Hawaii*, 7 B.R. 890 (Bankr. Hawaii 1980), is similar to this case. The *Bergdog Productions* court denied compensation to the debtor's attorney because the debtor's stockholders had personally guaranteed the attorney's fees. In *Bergdog Productions,* the court concluded the "payment agreement placed the attorney for the debtor in a conflict of interest situation," as he "may be required to choose between conflicting duties." *In re Glenn Electric Sales Corp.*, 89 B.R. 410, 414 (Bankr. D.N.J. 1988), citing *Woods v. City Nat'l Bank*, 312 U.S. 262 (1940).

### Iii. Applicant Is Not Disinterested Based On The Prior Or Current Representation Of The Debtor's Principal, The Fee Arrangement, And The Debt Structure Between The Principal And The Debtor.

30. The Third Circuit uses a flexible approach to determine whether a professional is disinterested that requires bankruptcy courts "to analyze the factors present in any given case in order to determine whether the efficiency and economy which may favor multiple representations must yield to competing concerns affecting fairness to all parties involved and protection of the integrity of the bankruptcy process." *In re BH & P, Inc.,* 949 F.2d 1300, 1316 (3d Cir. 1991). The Third Circuit set forth certain factors to be considered including but not limited to "the nature of the disclosure of the conflict made at the time of appointment, whether the interest of the related estates are parallel or conflicting, and the nature of the inter-debtor claims made." *Id.* The determination of whether to disqualify a professional based upon a situation not yet rising to the level of an actual conflict is a matter committed to the bankruptcy court's sound exercise of discretion. *Id.*

31. The dual representation of a corporation and its principal has been disfavored by various courts. *See In re Straughn*, 428 B.R. 618, 624 (Bankr. W.D. Pa. 2010); *In re N. John Conzolo Assoc., Inc.*, 423 B.R. 735. 737 (Bankr. W.D. Pa. 2010). *See also*, *In re Wynne Residential Asset Mgmt., LLC*, 2009 Bankr. LEXIS 4164 * 12 (Bankr. W.D.N.C. 2009)(stating flatly that "[s]imultaneous representation of a DIP and its owner(s) or its management is not permitted in Chapter 11"); *In re BH&P Inc.*, 949 F.2d 1300 (3d Cir. 1991)(same Chapter 7 trustee could not serve as Chapter 7 trustee for a debtor corporation and its principals where both filed Chapter 7 petitions); *In re Star Broadcasting, Inc.*, 81 B.R. 835 (Bankr. D.N.J. 1998)(court denied same law firm from representing both a corporation and its sole shareholder who both filed Chapter 11 petitions); *In re Wiley Brown & Assocs.*, LLC, 2006 Bankr. LEXIS 1975 at * 12

9

(Bankr. M.D.N.C. 2006)(holding that conflict of interest precluded attorney from representing both debtor and an owner of the debtor, due in part to fact that owner was guarantor of debtor's largest debts).[1]

32. "Where there are numerous, apparent conflicts, even if the court were to give the debtors and proposed counsel the benefit of every doubt, many courts conclude that the cumulative effect of even 'potential' conflicts of interest are of such significance and scope that the individual debtor and corporate debtor must each retain separate counsel." *See In re Bryant*, 2011 Bankr. LEXIS 4651 * 6 and 7 (Bankr. E.D.N.C. 2011). *See also*, *In re Straughn*, 428 B.R. at 627 (holding that the "efficiency and economy that may favor multiple representation must yield to the competing concerns affecting fairness to all parties involved and in protecting the integrity of the bankruptcy process").

33. In the *Straughn* case, the Court found it difficult to imagine a situation that would allow dual representation of a corporation and the corporation's principal:

> [a]s a practical matter, given the nature of the relationship between a sole shareholder and the related corporation, it is difficult to imagine a situation where both parties in separate Chapter 11 cases could be represented by a single attorney. In most cases of this type, similar to the present situation, conflicts abound over issues

---

[1] Multiple representations that may be allowed in commercial settings, especially with the informed consent of the clients, may not be acceptable in bankruptcy. The Bankruptcy Code provisions dealing with conflicts of interest are generally much stricter that the comparable rules of professional conduct. *See, Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434 (D.Utah 1998) citing *In re Amdura Corp.*, 121 B.R. 862, 866 (Bankr. D. Colo. 1990). Consent by a Chapter 11 debtor to waive conflicts is insufficient to cure any actual or potential conflicts because the ultimate parties in interest are the bankruptcy estate's creditors. *See*, *In re Jeep Eagle 17*, 2009 Bankr. LEXIS 3614 * 5 (Bankr. D.N.J. 2009). *See*, *also*, *In re Git-N-Go, Inc.*, 321 B.R. 54, 60 (Bankr. N.D. Okla. 2004)(finding that debtor may not waive conflicts on behalf of the estate); *In re Plaza Hotel Corp.*, 111 B.R. 882, 891 (E.D. Cal. 1990)(noting that consent was product of same person "changing hats" and objection was raised which vitiated any consent).

> such as the amount of the shareholder's salary, the appropriate amount of rental payments between the parties, joint liabilities or liabilities for which the shareholder serves as coobligor or guarantor, a debtor-creditor relationship between the parties, or situations in which transfers between the parties have occurred prior to the filing date. These types of relationships require debtor's counsel to analyze and ponder the effect of these actual and potential conflict situations in the bankruptcy context before the case is even filed. Where circumstances are presented that interfere with counsel's exercise of independent judgment on behalf of client and creditors, the wise choice is not to assume a dual representation relationship.

*See Straughn*, 428 B.R. at 627-28.

34. In this case, Applicant is not be disinterested as Applicant represents or represented both the Debtor and the Debtor's Principal. If Applicant currently represents the Debtor's Principal, Applicant is not disinterested as his duty of loyalty is divided and his independent judgment compromised. Even if the Applicant no longer represents the Debtor's Principal, since he so recently represented the Debtor's Principal, Applicant's ability to sever the representation of Debtor is likely impossible. The attorney/client relationship between Applicant and Debtor's Principal has been created and cannot be easily undone. The conflict is further exacerbated by the fact that the Debtor's Principal is paying the fees on behalf of the Debtor.

35. The fee arrangement and the prior or current representation of both the Debtor and its principal are not the only actual or potential conflicts. The Debtor has identified on Schedule E/F debts owing to the IRS and the State of New Jersey Division of Tax. If the debts of the Debtor are also owed by Debtor's Principal, and Applicant represents or represented the Debtor's Principal in connection with the collection of those debts, such representations would create an impermissible conflict of interest. The assets of one or the other party will have to be used to pay those claims and decisions made with respect to which assets will be used to pay

those claims. Regardless, in order to be paid its fees, if any, Applicant will be placed in a position where it must protect and defend the interest of the Debtor's Principal before the interests of the Debtor or vice versa.

36. Even if this Court is to permit Applicant to represent both the Debtor and Debtor's Principal, the Court should require the Debtor to certify that no overt debtor-creditor relationship exists between either the Debtor and Debtor's Principal and that the Debtor has not guaranteed any of the debts of the Debtor.

## IV. Applicant Must Meet Court Factors Before Applicant Can Receive a Post-Petition Retainer.

37. If Applicant received a post-petition retainer applicant must meet the factors set forth in *In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 680 (Bankr. D. Colo. 1992) before receiving the retainer. Applicant should be required to meet the factors now even if the retainer has already been paid. Factors considered in the context of a proposed post-petition retainer include, but are not necessarily limited to:

> (1) the retainer's economic impact on the debtor's ongoing business operation;
>
> (2) the retainer's economic impact on the ability of the debtor to reorganize;
>
> (3) the amount and reasonableness of the retainer;
>
> (4) the reputation of debtor's counsel; and
>
> (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should this Court determine that the fees paid to counsel are not justified.

*See In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 680 (Bankr. D. Colo. 1992).

38. "[A]n applicant who requests a post-petition retainer or some other payment procedure, should demonstrate in its application papers that the *Jefferson* factors have been met." *See*, *In re Mac and Maryse Troung*, 259 B.R. 264, 268-69 (Bankr. D.N.J. 2001). Here, no such demonstration is made in the Application. Applicant should be required to provide documentary proof of the Debtor and Debtor's Principal are able to fund the retainer without adverse economic consequences to the Debtor's operations and its ability to reorganize.

## **CONCLUSION**

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny the Retention Application.

        Respectfully submitted,

        ANDREW R. VARA
        ACTING UNITED STATES TRUSTEE
        REGION 3 AND 9

        By: */s/ Maggie McGee*
            Maggie McGee
            Trial Attorney

Dated: September 2, 2020